UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WALLACE FLAGG, JR.,

                        Plaintiff,

            v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.
_____

**REPORT AND
RECOMMENDATION**

12-CV-644
(GTS/VEB)

## I. INTRODUCTION

In September of 2009, Plaintiff Wallace Flagg, Jr. applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since May of 2009 due to various physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorneys, Olinsky Law Group, Tanisha T. Bramwell, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 22, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

## II. BACKGROUND

The procedural history may be summarized as follows:

On September 15, 2009, Plaintiff applied for SSI benefits and DIB under the Social Security Act, alleging that he had been unable to work since May 27, 2009. (T at 147-49, 150-52, 161, 166).[1] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Syracuse, New York, on April 28, 2011, before ALJ Thomas P. Tielens. (T at 26). Plaintiff appeared with an attorney and testified. (T at 29-47).

On June 22, 2011, ALJ Tielens issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying his claim for benefits. (T at 10-25). The ALJ's decision became the Commissioner's final decision on February 29, 2012, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, by and through counsel, timely commenced this action by filing a Complaint on April 13, 2012. (Docket No. 1). The Commissioner interposed an Answer on August 6, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on September 13, 2012. (Docket No. 11). The Commissioner filed a Brief in opposition on March 14, 2013. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons below, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further proceedings.

## II. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir.1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

The Commissioner has established a five-step sequential evaluation process to

determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 27, 2009 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2013. (T at 15). The ALJ found that Plaintiff's seizure disorder met the definition of a "severe impairment" under the Social Security Regulations. (T at 15). The ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 17).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but should avoid driving, working at heights, or working around machinery. He found that Plaintiff could perform simple work. (T at 17-20).

The ALJ determined that Plaintiff could not perform his past relevant work as a hospital technician, truck driver, electrical apprentice, maintenance man, office cleaner, or construction worker. (T at 20).  However, considering Plaintiff's age (43 on the alleged onset date), education (high school equivalent), and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 20-21).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as that term is defined under the Act, from the alleged onset date (May 27, 2009) through the date

of the ALJ's decision (June 22, 2011), and was therefore not entitled to benefits. (T at 21). As noted above, the ALJ's decision became the Commissioner's final decision on February 29, 2012, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. He offers five (5) principal arguments. First, Plaintiff contends that the Social Security Appeals Council failed to properly evaluate and address new and material evidence. Second, Plaintiff argues that the ALJ did not properly assess the severity of his depression and anxiety. Third, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence. Fourth, Plaintiff challenges the ALJ's credibility assessment. Fifth, Plaintiff argues that the ALJ's step five determination was flawed. This Court will address each claim in turn.

### a. Failure of Appeals Council to Adequately Address New Evidence

Plaintiff submitted additional medical records from the Veteran's Administration Medical Center to the Appeals Council. The additional records included treatment notes and reports covering the period between December 9, 2009, and March 3, 2011. (T at 421-556). In addition, Plaintiff provided a medical source statement from Dr. Andrew Bragdon, his treating physician. (T at 416-20). Dr. Bragdon diagnosed migraine headaches, "likely" post-traumatic stress disorder, and epilepsy. (T at 416). He reported that Plaintiff's headaches (which occur 3-4 times per week) cause nausea, phonophobia, photophobia,[4]

---

[4]"Phonophobia" is the fear of noises, voices, one's own voice or of telephones; "photophobia" is the fear of light. *See* http://www.merriam-webster.com/medical/phonophobia, http://www.merriam-webster.com/medical/photophobia (last accessed June 23, 2013).

throbbing pain, inability to concentrate, mood changes, impaired sleep, impaired appetite, and avoidance of activity. (T at 416). Dr. Bragdon also indicated that Plaintiff experiences daytime seizures, which occur without warning and last 5-7 minutes. (T at 418). Following a seizure, Plaintiff is confused, exhausted, paranoid, irritable, and suffers from a severe headache. (T at 419).

Dr. Bragdon diagnosed depression, anxiety, irritability, and memory problems. (T at 419). He opined that Plaintiff would likely be absent from work more than four days per month as a result of his impairments or treatment. (T at 420). Dr. Bragdon assessed no exertional limitations. (T at 420).

The Appeals Council stated that it had considered the additional evidence, including Dr. Bragdon's opinion. (T at 1, 4). The Appeals Council nevertheless denied Plaintiff's request for review. (T at 1-4). The Appeals Council offered a single sentence to explain why the new evidence did not provide a basis for granting review: "We found that this information does not provide a basis for changing the [ALJ's] decision." (T at 2).

For the reasons outlined below, the Appeals Council's explanation was insufficient. A remand should be ordered.

Under the Social Security Act, a claimant may "submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." 20 C.F.R. §§ 404.970, 416.1470; see also Perez v. Chater, 77 F.3d 41, 44 (2d Cir.1996). To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F. Supp.2d 194, 204

(E.D.N.Y.2007) (citing <u>Lisa v. Sec'y of Health & Human Servs.</u>, 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." <u>Id.</u> If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." <u>Shrack v. Astrue</u>, 608 F. Supp.2d 297, 302 (D. Conn.2009).

Here, the Commissioner argues that the Appeals Council properly dismissed Dr. Bragdon's opinion because his medical source statement was completed in January of 2012, six (6) months after the ALJ's decision. (T at 420).

This argument is contrary to Second Circuit authority holding that "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." <u>Newbury v. Astrue</u>, 321 Fed. Appx. 16, 2009 WL 780888, at *2 n.2 (2d Cir. Mar. 26, 2009)(citing <u>Pollard v. Halter</u>, 377 F.3d 183, 193 (2d Cir.2004)). The categorical refusal to consider evidence because it was created after the date of the ALJ's decision is an error. <u>Pollard</u>, 377 F.3d at 193 ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the Claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [the] condition. It strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought"); <u>see also</u> <u>Sergenton v. Barnhart</u>, 470 F. Supp.2d 194, 204 (E.D.N.Y. 2007).

The Commissioner also contends that the Appeals Council was justified in rejecting

Dr. Bragdon's opinion because the treating physician's assessment was contradicted by other evidence of record. This argument is unavailing.

Under the "treating physician's rule," the Commissioner must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, the Commissioner may nonetheless give it "extra weight" under certain circumstances. In this regard, the following factors should be considered when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

Here, the Appeals Council (apparently) discounted Dr. Bragdon's assessment, but did not provide any explanation or cite any evidence in support of its decision. It did not

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

even state what weight, if any, it afforded to the opinion. This was error and a remand is warranted.

"[W]here newly submitted evidence consists of findings made by a claimant's treating physician, the treating physician rule applies, and the Appeals Council must give good reasons for the weight accorded to a treating source's medical opinion." James v. Commissioner of Social Security, No. 06-CV-6180, 2009 WL 2496485, at *10 (E.D.N.Y. Aug. 14, 2009); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999)(holding that the Commissioner "is required to explain the weight it gives to the opinions of a treating physician"); 20 C.F.R. § 404.1527(d)(2) ( "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 134; see also Farina v. Barnhart, No. 04-CV-1299 (JG), 2005 WL 91308, at *5 (E.D.N.Y. Jan.18, 2005) (remanding for further proceedings where the Appeals Council failed to acknowledge receipt of new evidence from claimant's treating physician and failed to "provide the type of explanation required under the treating physician rule" when denying review)); Knepple-Hodyno v. Astrue, No. 11-cv-443, 2012 WL 3930442, at *9 (E.D.N.Y. Sep't 10, 2012)(remanding for further proceedings because the "Appeals Council provided no explanation as to why it did not give ... new evidence controlling weight"); Shrack v. Astrue, No. 3:08-CV-00168, 2009 WL 712362, at *3 (D.Conn. Mar. 17, 2009)("Importantly, the treating physician rule applies to the Appeal's [sic] Council when the new evidence at issue reflects the findings and opinions of a treating physician.").

In this case, the Appeals Council was obligated to explain what weight, if any, it was

affording to Dr. Bragdon's assessment and provide an explanation for its decision. No such explanations were provided. The summary statement that the additional evidence presented by Plaintiff (including Dr. Bragdon's assessment) did "not provide a basis" for changing the ALJ's decision is insufficient as it frustrates meaningful review by this Court and provides the Plaintiff with no material information to explain why his treating physician's opinion was rejected. See Stadler v. Barnhart, 464 F. Supp.2d 183, 188 (W.D.N.Y. 2006) (concluding that the Appeals Council erred by "fail[ing] to follow the requirements of the Commissioner's regulation in summarily concluding, without 'good reasons' stated, that the new evidence submitted by plaintiff's counsel to it was insufficient to disturb the ALJ's determination" (quoting Rice v. Barnhart, No. 03-CV-6222, 2005 WL 3555512, at *13 (W.D.N.Y. Dec. 22, 2005)).

Moreover, the lack of a meaningful explanation is particularly troubling in this case. The ALJ recognized that the records from the VA Medical Center were important to his determination and held the record open for four weeks following the hearing to allow for the submission of the records.[6] (T at 13). When making his RFC determination, the ALJ referenced the fact that "the only limitations noted by the claimant's treatment providers, were seizure precautions." (T at 19).

The addition of the VA medical records, including an assessment of significant limitations from a treating provider, easily could have and should have influenced the ALJ's

---

[6]Even so, it does not appear the ALJ took any affirmative steps to obtain the VA records prior to making his decision and made his decision without them. This would provide a further reason for remand, in addition to the Appeals Council's error outlined above. See Vincent v. Comm'r of Social Security, 651 F.3d 299, 305 (2d Cir. 2011)("The duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'")(citations omitted)

decision. Dr. Bragdon had a treating relationship with Plaintiff that covered two (2) years. (T at 416). His assessment was supported, in part, by the report of Dr. Kristen Barry, a consultative examiner, who diagnosed several impairments, including depression disorder, anxiety disorder, seizure disorder, and headaches. (T at 220). Dr. Barry found Plaintiff's belief that he was "unable to work because of health problems" consistent with her examination results. (T at 220).

The Appeals Council did not address any of this. Rather, it simply found that consideration of Dr. Bragdon's assessment did not "provide a basis" for changing the ALJ's decision. As outlined above, this is contrary to the regulatory requirement that the Commissioner provide "good reasons" for discounting a treating physician's opinion. It also frustrates meaningful review by this Court. A remand is therefore required for reconsideration of the additional medical evidence and compliance with the treating physician's rule (in particular, the obligation to provide "good reasons" for the weight assigned to treating physician's opinion).

### b. Severity Analysis

The ALJ concluded that Plaintiff's depression, anxiety, and panic attacks were non-severe impairments. (T at 16). This finding was not adequately supported and should also be revisited on remand.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding,

carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." <u>Gibbs v. Astrue</u>, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. <u>Miller v. Comm'r of Social Sec.</u>, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); <u>see</u> <u>also</u> 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." <u>Coleman v. Shalala</u>, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. <u>Kohler v. Astrue</u>, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and

(4) episodes of decompensation. <u>See</u> 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

In the present case, the ALJ assessed no limitation as to Plaintiff's activities of daily living, mild limitation with respect to social functioning, mild limitation with regard to concentration, persistence, or pace, and no episodes of decompensation. (T at 17). In support of his finding, the ALJ afforded "some weight" to the opinion of Dr. Kristen Barry, a consultative examiner, based upon her "specialty and thorough examination" of Plaintiff. (T at 16).

However, the ALJ did not reconcile his severity finding with Dr. Barry's assessment that Plaintiff had depressive disorder and anxiety disorder and "some difficulty handling stressors." (T at 220). Dr. Barry recommended psychiatric treatment and described Plaintiff's prognosis as "guarded." (T at 220). Dr. Barry also concluded that Plaintiff's understanding of his conditions were "consistent with the examination results." (T at 220). These findings appear to contradict the ALJ's conclusion that Plaintiff's depression and anxiety were not severe.

In addition, the ALJ did not address the assessment provided by another Dr. Dennis Noia, another consultative psychiatric examiner. Dr. Noia opined that Plaintiff could

14

understand and follow simple instructions, but appeared to have "some difficulty dealing with stress." (T at 380-81). Dr. Noia diagnosed adjustment disorder with depressed mood, described Plaintiff's prognosis as "fair," and recommended treatment. (T at 381). He also concluded that Plaintiff's allegations were consistent with the results of his examination. (T at 381).

The consultative examiners' findings should be addressed more carefully on remand. In addition, the severity assessment should be revisited to consider Dr. Bragdon's diagnosis of depression, anxiety, irritability, and memory problems, as well as his assessment that Plaintiff would likely be absent from work more than four days per month as a result of his impairments or treatment. (T at 419-20).

### c. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but should avoid driving, working at heights, or working around machinery. He further found that Plaintiff could perform simple work. (T at 17-20). The ALJ did not note any limitations (or make any specific findings) with regard to Plaintiff's ability to handle work-related stress. This issue should also be addressed on remand.

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

Both psychiatric consultative examiners assessed that Plaintiff would have difficulty dealing with stress. (T at 220, 381). The ALJ afforded "some weight" to Dr. Barry's opinion, but did not explain how he reconciled the lack of any stress limitation with Dr. Barry's finding. The ALJ did not address Dr. Noia's assessment at all. The question of stress must therefore be revisited on remand. See Stadler v. Barnhart. 464 F. Supp.2d 183, 189, 464 F.Supp.2d 183 (W.D.N.Y. 2006)("Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work.")(citing SSR 85-15; Welch v. Chater, 923 F.Supp. 17, 21 (W.D.N.Y.1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments")).

In addition, the RFC determination should be reassessed in light of the additional medical evidence. As noted above, the ALJ recognized the importance of the VA medical records and held the administrative record open for four weeks following the hearing to allow for the submission of the documents. (T at 13). In his RFC assessment, the ALJ referenced the fact that "the only limitations noted by the claimant's treatment [*sic*] providers, were seizure precautions." (T at 19). The record now contains additional evidence, including additional limitations noted by a treating physician. The RFC determination should accordingly be revisited.

### d. Credibility

A claimant's subjective complaints are an important element in disability claims, and must be thoroughly considered. <u>See</u> <u>See</u> <u>Ber v. Celebrezze</u>, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. <u>See</u> <u>Brandon v. Bowen</u>, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. <u>See</u> 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; <u>Gernavage v. Shalala</u>, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." <u>Lewis</u>

v. Apfel, 62 F. Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No.

7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting <u>Brandon v. Bowen</u>, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: He had been experiencing seizures for approximately two (2) years. (T at 33). Prescription medication helps, but makes Plaintiff feel "shaky." (T at 34). His doctors have instructed him not to drive, use power tools, or climb. (T at 35). He experiences very painful headaches two to three times per week, lasting half a day to an entire day. (T at 36). Following a seizure, Plaintiff is violent, confused, and combative. He once left his home in a state of undress and resisted his girlfriend's efforts to prevent him from leaving. (T at 37). He loses control of his bladder during seizures. (T at 38). He experiences right knee soreness on a regular basis. (T at 38). Plaintiff has been "battling depression for several years," which causes sadness and social isolation. (T at 38-39). The condition also affects his concentration. (T at 39). He has sporadic anxiety/panic attacks, lasting 5-10 minutes. (T at 40-41).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (T at 19).

The ALJ discounted Plaintiff's credibility, in part, because Plaintiff received unemployment benefits during the period of alleged disability. As a condition of receiving those benefits, Plaintiff was obliged to certify that he was "ready, willing, and able to work." (T at 19). Plaintiff challenges this aspect of the ALJ's assessment, arguing that his unemployment certifications should not have been considered.

However, several courts in this Circuit have concluded that the collection of

19

unemployment benefits during the period of alleged disability is properly considered by an ALJ when assessing a claimant's credibility. See, e.g., Felix v. Astrue, 11–CV–3697 (KAM), 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012)(collecting cases)("Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination."); Plouffe v. Astrue, No. 3:10 CV 1548(CSH), 2011 WL 6010250, at *22 (D.Conn. Aug. 4, 2011) (quoting from August 9, 2010 Social Security Administration Memorandum to the effect that: "'[R]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits[,]' but rather, 'is only one of the many factors that must be considered in determining whether the claimant is disabled.'"); Jackson v. Astrue, No. 1:05–CV–01061, 2009 WL 3764221, at *8 (N.D.N.Y. Nov. 10, 2009)("Accordingly, the court finds that although plaintiff's filing for and receipt of unemployment benefits while claiming to be disabled is not proof-positive that plaintiff was no longer disabled, the ALJ properly considered plaintiff's claim for unemployment benefits when assessing plaintiff's credibility.").

However, this Court finds that the credibility determination should nevertheless be revisited on remand. A significant part of the ALJ's decision to discount Plaintiff's credibility was the fact that "[t]he only limitations noted by [Plaintiff's] treating providers, were seizure precautions." (T at 19). The additional evidence from Dr. Bragdon (a treating physician) alters that analysis. (T at 416-20). Moreover, the ALJ did not address the fact that Plaintiff's claims of disabling anxiety/panic attacks was supported by the consultative psychiatric examiners, both of whom opined that Plaintiff would have difficulty with stress.

(T at 220, 381). Further, as discussed above, both consultative examiners found Plaintiff's allegations consistent with their findings (T at 220, 381), which should have been considered by the ALJ as enhancing Plaintiff's credibility. Moreover, it is understandable that a person in Plaintiff's position would be conflicted concerning his or her ability to work, which might include a lack of insight into the disability coupled with some wishful thinking and pride, together with subtle economic pressure. The discounting of credibility should not function as punishment by denying benefits because of a perceived character flaw, which might not, in fact, exist. As such, a remand is required on this issue.

### e. Step Five Analysis

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account

the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

Here, the ALJ concluded that Plaintiff's ability to perform work at all exertional levels had been compromised by non-exertional limitations, but found that those limitations would have little or no effect on the occupational base of unskilled work at all exertional levels. (T at 20-21). As such, the ALJ applied the framework of Section 204.00 of the Grids to make a "non-disabled" finding. (T at 21). The ALJ also found no non-exertional limitations involving unskilled work and, thus, determined that a vocational expert's testimony was not needed. (T at 21).

The step 5 analysis will need to be reviewed on remand. The ALJ's finding was based on his RFC determination, which was flawed for the reasons outlined above. In particular, the RFC question will need to be revisited in light of the additional evidence. Further, more careful consideration should be given to the non-exertional limitations identified by the consultative examiners (in particular, with regard to Plaintiff's ability to manage stress).

**3.     Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

**IV. CONCLUSION**

This Court recommends that Plaintiff be GRANTED judgment on the pleadings, that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for further proceedings.

Respectfully submitted,

_____

Victor E. Bianchini
United States Magistrate Judge

Dated:  June 25, 2013

        Syracuse, New York

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:   June 25, 2013

            Syracuse, New York